MORSE DRY DOCK & REPAIR CO. v. SEABOARD TRANS⸺
TION CO.

(District Court, S. D. New York. May 13, 19⸺

CONTRACTS—CONVERSION OF SHIP INTO BARGE—DELAY IN C⸺

A libelant, which contracted to convert a ship into a ba⸺
ent in accordance with certain specifications within a st⸺  , ⸺, and
stipulated to pay liquidated damages for each day's delay in completion
beyond such time, *held* not entitled to be released from such payment on
the ground that the delay was occasioned by changes in the specifications
and extra work required by respondent, which did not necessarily affect
the length of time required, and where no extension was asked for when
they were agreed to, nor because of respondent's delay in furnishing a
windlass, where it appeared that libelant was not ready for it, but that
the delay in completion was due to a strike of carpenters in its employ,
for which no provision was made in the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§
1375, 1379.]

In Admiralty.

Armstrong, Brown & Boland, for libellant.
Rumsey, Sheppard & Ingalls, for respondent.

ADAMS, District Judge. This action was brought by the Morse Dry Dock & Repair Company against the Seaboard Transportation Company to recover a balance of $1,700., claimed to be due for work performed and material furnished in September, October and November, 1906, in changing the ship John A. Briggs, owned by the respondent, into a barge, under a contract dated in September 1906. The contract was based on certain specifications furnished by the respondent to the libellant and the following letters:

"Brooklyn, N. Y., Sept. 5th, 1906.
Seaboard Trans. Co., 1 Broadway, New York City.

Gentlemen:—We hereby agree to faithfully carry out and complete all the al⸺
terations and repairs to Ship 'John A. Briggs' as set forth in specifications
dated New York, August 30th, 1906, and to abide by all the conditions ex⸺

pressed or implied therein for the sum of Eight thousand five hundred and ninety six (8596) dollars and to complete the work in thirty five (35) running days from the time of delivery of the ship at our yard, or pay to her owners, the Seaboard Transportation Company, as liquidated damages and not as penalty, the sum of Fifty dollars ($50.) per day for each and every day during which completion shall be delayed.

Yours very truly　　　　　　　　Morse Dry Dock and Repair Co.,
　　　　　　　　　　　　　　　　Edw. P. Morse, Genl Manager
　　　　　　　　　　　　　　　　　　E. P. M. Jr.

We also submit approximate estimate of five hundred and forty six (546) dollars to cut 18″ off keel.　　　　　　　　　　　　E. P. Morse Jr.″

The contract originally provided that:

"Old windlass to be removed, New Steam windlass with operating capstan to be installed. Owner to supply the windlass and capstan."

This was modified by the following letter:

　　　　　　　　　　　　　　"Brooklyn, N. Y.　Sept. 15, 1906.
Seaboard Transportation Co., 1 Broadway, New York City.

Gentlemen:—Replying to your request for estimate to install new hawse pipes on barge 'John A. Briggs,' including all the necessary pattern work, etc., we herewith submit price of Four hundred and seventy eight (478) dollars.

We had estimated $289.00 to furnish and install hoisting gear to raise present anchors. Should you decide to install the hawse pipes, we will give you credit for this amount, which will make the additional cost $128.00.

Yours very truly,　　　　　　　　Morse Dry Dock and Repair Co.,
　　　　　　　　　　　　　　　　E. P. Morse Genl. Manager
　　　　　　　　　　　　　　　　　　K.″

The contract finally called for payments for the work of $8,596. plus $546. plus $128. plus $661.98, the latter for extra work, and when it was finished, the respondent was willing to pay, after deducting $1,700. which was claimed to be due by reason of 34 days' delay in completing the work after the stipulated time, October 12, 1906. This is the sum in dispute, the balance of the claim having been paid.

The question in the case is whether the libellant is entitled to recover this sum or whether the respondent should be allowed to set off against it the claim of 34 days' delay in delivering the vessel, which at the rate of $50. per day would amount to the disputed sum.

The pleadings show that the Briggs was delivered to the libellant which began work on the 7th day of September and between that date and the 15th day of November furnished the materials and labor called for by the modified contract and, between the same dates, the libellant performed extra work upon the vessel at the instance of the respondent of the agreed and reasonable value of $661.98.

1. The first question is concerning the change in the specifications agreed to by the parties and shown by the libellant's letter of September 15th, quoted supra.

This was a trifling matter, costing only $189. and nothing was said by the libellant with reference to any additional time which would be required in doing the work. Notice should have been given the respondent in some way if the libellant deemed the change would affect the important provision of the contract respecting time.

2. The second question concerns the extra work ordered by the respondent during the progress of the work. These were a number of

small items which did not interfere with the contract work. It was likewise the duty of the libellant in accepting the orders for this work to notify the respondent if it would affect the completion of the contract in any way. In the absence of such notice, it must be assumed that the libellant did not expect this work would bear upon the provision as to time. The libellant's difficulty was with its carpenters and it appeared from the testimony of the libellant's general manager that such work was very little affected by the extras. The libellant's claim in this connection is rejected.

3. The respondent, under the specifications, was to furnish the windlass. This was not supplied until October 11th, the day before the expiration of the period agreed upon for the completion of the work, and the libellant urges that the respondent's failure to furnish the windlass sooner was the cause of the delay.

The testimony shows that the windlass could have been installed in from four to ten days, the latter an outside estimate, and that the other work was progressing slowly, so that on October 1st about 75% was done and within the next 10 days 5% more. The respondent knew that the libellant was having trouble with its carpenters and it was not probable that the work would be completed for some time. Of course this did not justify the delay in the delivery of the windlass but it leads to an enquiry whether such delay was the proximate cause of the failure to complete the work in the agreed time. After examining carefully into the matter, I have concluded that it was not. It was the libellant's duty under the contract to supply the boiler, without which no steam connections could be made with the windlass and the boiler did not reach the vessel until October 22d. Long before that time, it was apparent that in all probability the work on the Briggs would be delayed beyond the 12th of October, and the respondent had an agent constantly attending to the matter and of course knew what the situation was and could judge what it was likely to be. The windlass was delivered in a completed state, the different parts assembled together, with the machine on the bed plate ready to be set down on the deck and bolted. It was thus only necessary to make a bed for it, complete the steam connections and put a capstan on top and with the work done in this way it could readily have been furnished in a few days, but instead of proceeding in this manner, the libellant took the machine apart because there was not room enough to put it in place owing to the absence of necessary carpenter work. There was no trouble about the work of the machinists in taking the machine apart but the work of carpenters was not obtainable, which doubtless accounts for the method that was adopted. Moreover there was so much obvious delay on account of the carpenter strike that it is fully sufficient to explain the whole trouble. The libellant in a letter to the respondent dated December 14, 1906, said in contending for the application of the strike clause, appearing at the head of the libellant's letter of September 5th:

"On October 1st, all of our carpenters went on strike, and they did not return to work until December 10th; notwithstanding this, and our certain right to an extension of time equal to the number of days between October 1st and December 10th, because of this strike, we did employ non-union carpenters, and did finish your vessel before the end of the strike."

In this letter nothing was said about any delay from the windlass, the claim being that the delay was caused by the extra work, and referring to the strike clause.

There seems to be no doubt that the delay was caused by the strike of the libellant's carpenters. The respondent was in no way liable for a delay of this kind, no allusion having been made in the body of the contract for any exemption from responsibility for such cause and the note at the head of the letter being ineffective in view of the respondent's attention never having been called to it and it not having been seen by its contracting officers.

The libel is dismissed.